# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

HARLEN W. MOSES, )
)
        **Plaintiff,** )
)
v. ) Case No. CIV-07-307-RAW-SPS
)
MICHAEL J. ASTRUE, )
**Commissioner of the Social** )
**Security Administration,** )
)
        **Defendant.** )

## REPORT AND RECOMMENDATION

The claimant Harlen W. Moses requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 29, 1956, and was fifty years old at the time of the administrative hearing. He has a high school education plus vocational training as an electrician and previously worked as a maintenance worker/repairer (construction work), janitor and roofer. The claimant alleges he has been disabled since June 30, 2004, because of diabetes, diabetic ulcers of the feet, gangrene infections requiring amputations of the toes on his left foot, hypertension, obesity, and residuals of tuberculosis infection.

## Procedural History

On June 30, 2004, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Ralph Wampler conducted a hearing and found the claimant was not disabled on December 27, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant had the residual functional capacity ("RFC") to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for thirty minutes at a time for up to two hours in an eight-hour workday; and sit for six to eight hours in an eight-hour workday (Tr. 18-19). The ALJ concluded that although the claimant could not return to his past relevant work, he was not disabled because there was work he could perform existing in significant numbers in the regional and national economies, *e. g.*, parking lot attendant and bench assembler (Tr. 19).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly document the file; (ii) by failing to recognize all of his severe impairments; (iii) by failing to include all of his limitations in the RFC determination; and (iv) by failing to properly evaluate his credibility. As part of his third contention, the claimant argues that the ALJ failed to properly consider the opinion of Dr. David Randall, D.P.M., the claimant's treating podiatrist. The undersigned Magistrate Judge finds this argument persuasive.

The record reveals that the claimant has a history of diabetes and related problems with his feet and received treatment from the Indian Hospital (Tr. 158, 165, 174, 179, 199, 202, 203, 207, 212, 215, 228-29, 274-75). Dr. Randall completed a Diabetes Mellitus RFC Questionnaire on the claimant's behalf in March 2006. He indicated the claimant had

symptoms of infections/fevers, swelling, chronic skin infections, vascular disease/leg cramping, extremity pain and numbness, and hyper/hypoglycemic attacks. Dr. Randall noted the claimant's diagnosis was gangrene of the left foot and assessed his prognosis as fair. He cited clinical findings of "[b]lack infected left great toe with large ulcerations," concluded the claimant was not a malingerer, and found the claimant's condition had "lasted or c[ould] . . . be expected to last at least twelve months[.]" Dr. Randall opined that the claimant's pain and other symptoms were severe enough to constantly "interfere with attention and concentration needed to perform even simple work tasks," and the claimant was currently unable to tolerate work stress. The claimant could not walk a city block, but after three to five months of healing, he could probably walk between one and two blocks. He could sit for only two hours total in an eight-hour workday and stand and/or walk for less than two hours total in an eight-hour workday and would need to take some unscheduled breaks. If work involved prolonged sitting, the claimant needed to have his legs elevated above the waist for six hours of an eight-hour workday. He was to use a cane or other assistive device when standing or walking and was currently not to bear any weight on his left foot. Dr. Randall determined the claimant could rarely lift and/or carry less than ten pounds and could never twist, stoop (bend), crouch/squat, or climb ladders and stairs. The claimant did not have significant limitations in repetitive reaching, handling, or fingering, but he was to avoid all exposure to extreme heat and cold, high humidity, wetness, cigarette smoke, soldering fluxes, solvents/cleaners, fumes, odors and gases, dust, and chemicals. In conclusion, Dr.

Randall noted the claimant currently was limited to complete non-weight bearing on the left foot but that in three to five months moderate weight bearing would likely be tolerated (Tr. 348-51).

At the administrative hearing, medical expert Thomas Lynn, M.D., reviewed the claimant's records and testified that he suffered from poorly controlled diabetes mellitus with diabetic neuropathy, status diabetic ulcers of the left foot, status post gangrene resulting in two amputated toes, poorly controlled hypertension, obesity, and non-compliance with medication (Tr. 373-74). When asked about the RFC completed by Dr. Randall, Dr. Lynn indicated that Dr. Randall was entitled to give opinions about the claimant's feet and not all the other areas the assessment covered (Tr. 376). He opined that the claimant had the ability "to sit for an unlimited period of time with the opportunity to change position at least every 30 minutes to an hour. Stand, walk for not more than 30 minutes and not more than two hours out of an eight hour day." (Tr. 374). He also testified the claimant had "[g]ood ability to bend, stoop, squat, crouch, and crawl[,] good ability to lift 50 pounds occasionally, 20 pounds frequently, but . . . the lifting is limited by amount of time . . . on his feet." The claimant's "ability to communicate was unlimited and the environment, no particular limitations." (Tr. 375).

The ALJ mentioned Dr. Randall's assessment in the decision and appeared to regard him as a treating physician. He specifically mentioned Dr. Randall's findings that "[the claimant] was precluded from any significant standing and limited to sitting about 2 hours

in an eight[-hour] workday" and that the claimant's legs would need to be "elevated . . . 6 hours per day." However, the ALJ discounted these findings because he did not view them as "permanent restrictions or limitations [that were] expected to last for a period of 12 continuous months" based on Dr. Randall's comments that the claimant "would . . . require an additional 3 to 6 months to heal and recover." (Tr. 18).

There are several deficiencies in the ALJ's evaluation of Dr. Randall's opinions. First, if the ALJ truly considered Dr. Randall a treating physician, he was required to determine whether his opinions were entitled to controlling weight, *i. e.*, if the opinions were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record[,]'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), and even if they were not entitled to controlling weight, the ALJ was to determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in §[§] 404.1527 [, 416.927].'"), *quoting Watkins*, 350 F.3d at 1300.[2] Further, if the ALJ rejected Dr. Randall's opinions entirely, "he must .

---

[2] The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion

. . give specific, legitimate reasons for doing so[,]" *Watkins*, 350 F.3d at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted]. The ALJ wholly failed to perform a treating physician analysis of Dr. Randall's opinions.

Second, the reason given by the ALJ for rejecting Dr. Randall's opinions as to the claimant's ability to sit, stand, and the need to lift his feet, *i. e.*, that he did not consider the limitations imposed by Dr. Randall to be permanent restrictions (Tr. 18), is not fully supported by the record. Dr. Randall *did* find that in three to five months the claimant's condition for weight bearing on his left foot might improve, but he also found that the claimant's impairments had lasted or were expected to last at least twelve months (Tr. 348). Because there was some question with regard to the duration of the claimant's impairments, the ALJ should not have rejected Dr. Randall's opinions on this basis without first recontacting him for clarification. *See*, *e. g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("If the ALJ concluded that Dr. Baca failed to provide sufficient support for his conclusions about the claimant's . . . limitations, the severity of those limitations, the effect of those limitations on her ability to work, . . . he should have contacted Dr. Baca for clarification of his opinion before rejecting it."). *See also* 20 C.F.R. §§ 404.1512(e)(1),

---

is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).

416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved[.]").

Third, the ALJ failed to address several of the limitations imposed by Dr. Randall on the claimant, *e. g.*, severe pain and impairments "interfere[d] with attention and concentration needed to perform even simple work tasks," currently unable to tolerate work stress, limitations on walking, unscheduled breaks, use of a cane or other assistive device when standing or walking, restrictions on lifting and/or carrying, postural limitations, and environmental restrictions (Tr. 348-51). The Commissioner explains (as did the medical expert) that the ALJ had to consider only Dr. Randall's opinions as they related to the claimant's feet, *see*, *e. g.*, 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4) (noting a licensed podiatrist is an acceptable medical source "for purposes of establishing impairments of the foot, or foot and ankle only"), but the ALJ made no mention of Dr. Randall's other opinions nor did he provide any reasons for rejecting them. Although the Commissioner's explanation is plausible, the undersigned Magistrate Judge may not consider it because the ALJ did not do so. *See Robinson*, 366 F.3d at 1084 ("'[T]he magistrate judge erred in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's decision should have been evaluated based solely on the reasons stated in the decision."), *citing Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962). *See also Drapeau v. Massanari*, 255 F.3d 1211,

1214 (10th Cir. 2001) (noting that a reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991).

Finally, when determining the claimant's RFC, the ALJ appears to have given more weight to the testimony of medical expert Dr. Lynn than Dr. Randall's opinions. To the extent the ALJ favored the opinion of Dr. Lynn, he should have explained why he preferred the opinion of a non-examining medical expert over that of the claimant's treating physician. *See Robinson*, 366 F.3d at 1084 ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. §§ 404.1527(d)(1), (2), 416.927(1), (2) and Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2. *See also Warren v. Barnhart*, 2006 WL 4050700, at *7 (D. Kan. July 10, 2006) (remanding ALJ's decision because it "contain[ed] no analysis of the expert's medical opinion, evaluation of the opinion pursuant to the regulatory factors, or explanation of how the expert's opinion outweigh[ed] that of the treating physician.") [unpublished opinion].

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the opinions from Dr. Randall and Dr. Lynn. If

the ALJ subsequently determines that additional limitations should be included in the claimant's RFC, he should then redetermine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Any objections to this Report and Recommendation must be filed within ten days.

**DATED** this 19th day of February, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**